UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MITCHELL INTERNATIONAL, INC.<br><br>Plaintiff,<br>v.<br><br>HEALTHLIFT PHARMACY SERVICES, LLC et al.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER TO MAINTAIN CONFIDENTIAL DESIGNATIONS OF CERTAIN PRODUCED DOCUMENTS (DOC. NO. 164)**<br><br>Case No. 2:19-cv-000637-RJS-DAO<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Mitchell International, LLC's ("Mitchell") Short Form Discovery Motion for Protective Order to Maintain Confidential Designation of Certain Produced Documents ("Mot.," Doc. No. 164). Having considered the briefing and arguments of counsel at the February 9, 2021 hearing, the court GRANTS Mitchell's motion for the reasons set forth below.

BACKGROUND

In this action, Mitchell has asserted a claim of misappropriation of trade secrets against HealthLift Pharmacy Services, LLC, and three former employees of Mitchell now employed by HealthLift (collectively, the "HealthLift Defendants"). (Compl. ¶¶ 153–159, Doc. No. 2.) The HealthLift Defendants served discovery requests asking Mitchell to identify the trade secrets which were allegedly misappropriated and to produce documents evidencing those trade secrets. In response to these requests, Mitchell initially designated 3,342 documents as "attorneys' eyes only" (AEO). (Mot. 1, Doc. No. 164.) The HealthLift Defendants objected to this designation,

1

and Mitchell agreed to re-designate the majority of the documents as either public or

"confidential." (*Id.* at 2.)

In the instant motion, Mitchell seeks to maintain the "confidential" designation for 57 of

these documents and the AEO designation for 355 of these documents. (*Id.* at 1.) In support of

the motion, Mitchell attached a spreadsheet, designated as "confidential," which describes in

general terms the contents of each of the documents at issue. (Ex. A to Mot. (Sealed),

Spreadsheet, Doc. No. 166-1.)

The HealthLift Defendants oppose the motion, arguing (1) due process mandates removal

of the AEO designation for all documents which evidence allegedly misappropriated trade

secrets, and (2) all confidentiality designations should be removed from certain documents the

HealthLift Defendants claim contain public information. (Defs.' Opp'n to Pl.'s Short Form Disc.

Mot. for Prot. Order to Maintain Confidential Designations of Certain Produced Docs. ("Opp'n")

1, Doc. No. 182).

<u>DISCUSSION</u>

A. <u>AEO Designation of Documents Evidencing Trade Secrets</u>

Mitchell has the burden of demonstrating good cause to designate the documents at issue

as AEO. *See* Fed. R. Civ. P. 26(c)(1); *see also Martinez v. City of Ogden*, No. 1:08-cv-00087,

2009 U.S. Dist. LEXIS 12270, at *5 (D. Utah Feb. 18, 2009) (unpublished) ("The party seeking

a protective order has the burden to demonstrate good cause."). "Attorney's-eyes-only

protection is usually employed to protect against business harm that would result from disclosure

of sensitive documents to a competitor." *Martinez*, 2009 U.S. Dist. LEXIS 12270, at *7.

"Where trade secrets or other confidential commercial information is involved, the court will

balance the risk of disclosure to competitors against the risk that a protective order will impair

prosecution or defense of the claims." *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555

(C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.

1992)).  The party resisting disclosure "must first establish that the information sought is a trade

secret and then demonstrate that its disclosure might be harmful."  *Centurion Indus. v. Steurer*,

665 F.2d 323, 325 (10th Cir. 1981).

Courts routinely allow documents containing confidential information and trade secrets to

be designated as "attorneys' eyes only" in litigation between competitors.  *See Paycom Payroll,*

*LLC v. Richison*, 758 F.3d 1198, 1202–03 (10th Cir. 2014) ("The disclosure of confidential

information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving

trade secrets."); *Netquote, Inc. v. Byrd*, No. 07-cv-630, 2007 U.S. Dist. LEXIS 62292, at *4 (D.

Colo. 2007) (unpublished) ("With regard to an attorney's-eyes-only provision, confidential

information that may be used against the company by a direct competitor in the lawsuit is

generally afforded more protection."); Fed. R. Civ. P. 26(c)(1)(G) (providing for protective

orders "requiring that a trade secret or other confidential research, development, or commercial

information not be revealed or be revealed only in a specified way").

Mitchell argues it properly designated the 355 documents at issue as AEO because they

contain confidential "financial, marketing, training, operational, and customer information," and

disclosure of this information to the HealthLift Defendants, who are direct competitors of

Mitchell, would cause business harm.  (Mot. 4, Doc. No. 164.)  Mitchell contends the AEO

designation will not impair the HealthLift Defendants' ability to defend the case because their

attorneys and experts have access to the documents.  (*Id.* at 3.)

According to the HealthLift Defendants, the AEO designation must be removed from any

documents which Mitchell asserts evidence the allegedly misappropriated trade secrets in this

case.  (Opp'n 2–4, Doc. No. 182.)  The HealthLift Defendants contend the AEO designation violates their due process rights because they "cannot fully and fairly participate in the lawsuit without first having an opportunity to review these documents with counsel."  (*Id.* at 4.)

In support of this due process argument, the HealthLift Defendants rely on *DIRTT Environmental Solutions, Inc. v. Henderson*, No. 1:19-cv-144, 2020 U.S. Dist. LEXIS 197795 (D. Utah Oct. 22, 2020) (unpublished).  In *DIRTT*, the plaintiff claimed the defendants—its former employees—used its confidential information and trade secrets to approach the plaintiff's customers on behalf of their new employer and undercut the plaintiff's bids for certain projects. *Id.* at *5.  The plaintiff designated an interrogatory response identifying those projects and customers as AEO.  *Id.* at *2.  The defendants argued they needed access to the interrogatory response in order to notify their counsel whether the bids at issue were submitted by their employer or by independent dealers.  *Id.*  The court concluded "[i]t would be inherently unfair to allow Plaintiff to assert that the answer to [the interrogatory] demonstrates a stealing of trade secrets, without allowing Defendant to test this assertion."  *Id.* at *5.  The court noted that an AEO designation could not be used "as a sword and a shield," and the defendants "must be provided with an adequate opportunity to test Plaintiff's claims."  *Id.*

The HealthLift Defendants also cite *Core Laboratories LP v. AmSpec*, No. 16-0526, 2017 U.S. Dist. LEXIS 132317 (S.D. Ala. Aug. 18, 2017) (unpublished), a case in which a court rejected an AEO designation where "Plaintiffs essentially accuse Defendants of having taken the information but do not want Defendants to be able to see the information Plaintiffs claim Defendants stole."  *Id.* at *8.  Finally, the HealthLift Defendants cite *Martinez*, 2009 U.S. Dist. LEXIS 12270, a wrongful termination case in which a court held that "[r]estrictions on a

litigant's access to information that may constitute or lead to evidence and arguments may severely hamper the litigant's participation" and implicated due process concerns.[1]  *Id.* at *9.

Here, the AEO designation of documents evidencing Mitchell's trade secrets will not impair the HealthLift Defendants' ability to defend against the misappropriation claims, because Mitchell has provided a spreadsheet identifying and describing in general terms the confidential information at issue in each document.  This court previously held "[t]he HealthLift Defendants must know broadly what trade secrets are at issue in order to address whether they had access to that information while employed at Mitchell, whether that information was treated as confidential, and whether their knowledge of that information came from Mitchell or some other source."  (Mem. Dec. and Order Denying Pl.'s Short Form Mot. for Prot. Order to Maintain "Attorneys' Eyes Only" Designation of Certain Interrog. Resps. 5, Doc. No. 86.)  Mitchell's spreadsheet describing the contents of the documents at issue provides sufficient information for the HealthLift Defendants to address these matters, without the need to review the underlying documents themselves.  The descriptions are sufficiently detailed to allow the HealthLift Defendants to identify the confidential information which was allegedly misappropriated and to state whether they had access to such information during their employment, whether such information is generally known in the industry, and whether their knowledge of the information came from some other source.[2]  Thus, unlike the cases cited by the HealthLift Defendants, the

---

[1] Notably, *Martinez* did not involve litigation between competitors, and the AEO designation was requested solely based on a party's alleged untrustworthy prelitigation conduct rather than allegations of business harm.  2009 U.S. Dist. LEXIS 12270, at *2, 7–8.  For these reasons, *Martinez* has limited applicability here.

[2] The HealthLift Defendants did not raise any disputes as to the accuracy of the document descriptions in the spreadsheet.

HealthLift Defendants have "an adequate opportunity to test Plaintiff's claims," notwithstanding the AEO designations. *See DIRTT Envtl. Solutions*, 2020 U.S. Dist. LEXIS 197795, at *5.

Mitchell has also met its burden in showing a substantial risk of business harm if these documents are disclosed to the HealthLift Defendants. Mitchell and HealthLift are direct competitors, and Mitchell has adequately demonstrated the documents at issue contain its confidential financial, marketing, training, operational, and customer information which the HealthLift Defendants could use to Mitchell's detriment. This is precisely the type of sensitive business information which courts have routinely found warrants AEO protection in lawsuits involving direct competitors. *See, e.g.*, *Gaymar Indus., Inc. v. Cloud Nine, LLC*, No. 1:06-cv-62, 2007 U.S. Dist. LEXIS 12086, at *11–12 (D. Utah Feb. 20, 2007) (unpublished) (allowing AEO designation for "[t]echnical, customer, and financial data"); *Nutratech,* 242 F.R.D. at 555–56 (allowing AEO designation for customer and supplier lists).

In sum, the risk of harm resulting from disclosure of this information to the HealthLift Defendants outweighs any risk that the AEO designation will impair the HealthLift Defendants' ability to defend the case, which is minimal for the reasons set forth above. Accordingly, Mitchell may maintain the AEO designation for documents evidencing its trade secrets.

B. <u>Documents the HealthLift Defendants Assert Contain Public Information</u>

The HealthLift Defendants next contend that because four "groups" of documents which Mitchell designated as either AEO or "confidential" contain public information, all confidentiality designations should be removed from these documents. (Opp'n 4–6, Doc. No. 182.) However, the HealthLift Defendants have failed to show these documents contain public information, while Mitchell has demonstrated the confidentiality designations are warranted.

### *Groups 1 and 2*

Group 1 consists of two amendments (from 2011 and 2015) to a 2003 agreement between Walgreens and Mitchell's predecessor.  (*See* Opp'n 5, Doc. No. 182; Ex. A to Mot., Spreadsheet 22, Doc. No. 166-1.)  Group 2 is a letter from a third party to Mitchell in 2009 concerning settlement of a class action lawsuit.  (*See* Opp'n 5–6, Doc. No. 182; Ex. A to Mot., Spreadsheet 22, Doc. No. 166-1.)  The amendments and the letter are designated AEO.  (Ex. A to Mot., Spreadsheet 22, Doc. No. 166-1.)  HealthLift argues these documents should be made public because they do not contain confidentiality provisions, and because Mitchell voluntarily removed the confidentiality designation on the 2003 agreement.  (Opp'n 5–6, Doc. No. 182.)

Mitchell, on the other hand, represents the amendments and the letter contain specific pricing information.  (*See* Ex. A to Mot., Spreadsheet 22, Doc. No. 166-1.)  The HealthLift Defendants do not dispute this.  The AEO designation is warranted to protect Mitchell's confidential pricing information.  The absence of explicit confidentiality provisions in these documents does not somehow render this information public.  Likewise, the fact that Mitchell de-designated the underlying agreement has no bearing on whether the amendments contain information warranting AEO protection.  The AEO designation is appropriate for the documents in Groups 1 and 2.

### *Group 3*

Group 3 consists of two unsigned customer agreements faxed by Mitchell to potential customers, which Mitchell has designated as "confidential."  (*See* Opp'n 6, Doc. No. 182; Ex. A to Mot., Spreadsheet 16, Doc. No. 166-1.)  The HealthLift Defendants argue these documents cannot be confidential because Mitchell disclosed them to the potential customers without a prior obligation or agreement to keep them confidential.  (Opp'n 6, Doc. No. 182.)

Mitchell represents, and the HealthLift Defendants do not dispute, that these documents contain pricing and payment terms, provisions acknowledging the terms are confidential and proprietary, and fax stamps indicating the documents contain confidential information intended solely for the entity named.  (Ex. A to Mot., Spreadsheet 16, Doc. No. 166-1.)  This is sufficient to demonstrate the documents contain confidential information which was intended only for the designated recipient rather than the general public.  The "confidential" designation is appropriate for these documents.

*Group 4*

Group 4 consists of documents containing Mitchell's customer lists for various products, which Mitchell designated as "confidential."  (*See* Opp'n 6, Doc. No. 182; Ex. A to Mot., Spreadsheet 16–18, Doc. No. 166-1.)  The HealthLift Defendants argue these documents cannot be confidential because Mitchell maintains two webpages which allow public online searches for its customers, and, "using a simple computer routine, HealthLift was able to independently obtain Mitchell's entire customer lists . . . through the Mitchell webpages."  (Opp'n 6, Doc. No. 182.)

However, Mitchell's descriptions of the documents at issue, which the HealthLift Defendants do not dispute, indicate they contain more than just customer lists—they also contain lists of specific agreements, contract parties, and annual revenue and profitability information. (Ex. A to Mot., Spreadsheet 16–18, Doc. No. 166-1.)  The HealthLift Defendants have not shown the customer lists they compiled from the public website contain all the same information as the documents designated as "confidential."  Based on Mitchell's undisputed descriptions, the "confidential" designation is appropriate.

C.  <u>Other Documents Designated "Confidential"</u>

Apart from the specific groups of documents discussed above, the HealthLift Defendants'
opposition brief did not address the other documents Mitchell seeks to maintain as
"confidential."  At the hearing, the HealthLift Defendants conceded the confidentiality
designation should be maintained for these other documents.

CONCLUSION

For the reasons set forth above, the court GRANTS Mitchell's motion and ORDERS that
Mitchell may maintain its designations of all of the documents at issue.

DATED this 23rd day of April, 2021.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge